# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN BELLAN, individually and on behalf of all others similarly situated,** | : : | |
| **Plaintiff** | : | No. 1:20-cv-00744 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **CAPITAL BLUE CROSS,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Plaintiff Dawn Bellan ("Plaintiff" or "Named Plaintiff")'s unopposed motion for settlement approval (Doc. No. 75) of her Fair Labor Standards Act ("FLSA") collective action claim against Defendant Capital Blue Cross ("Defendant"). Along with Plaintiff's motion, the Court also considers Plaintiff's brief in support of her motion (Doc. No. 76), the parties' proposed settlement agreement ("Settlement Agreement") (Doc. No. 76-1), and the declarations of Plaintiff's attorneys Travis M. Hedgpeth and Jack L. Seigel ("Plaintiff's Counsel") (Doc Nos. 76-2, 76-3).

As an initial matter, the Court commends both Magistrate Judge Arbuckle and the parties for their extensive efforts to resolve this action prior to in-depth discovery or motions practice. As a result of these efforts, the Court is able to find that the majority of the terms of the Settlement Agreement are fair, reasonable, and in keeping with the purposes of the FLSA. However, the Court will seek more information from the parties with respect to two aspects of the proposed Settlement Agreement before opining on their reasonableness. First, the Court will direct the parties to address why the Court should approve the release provision contained in § IV, Paragraph 3.a. of the Settlement Agreement. Second, the Court will direct the parties to clarify the legal basis for the settlement procedure outlined in § IV, Paragraph 3.b. of the

Settlement Agreement, which would distribute settlement funds to employees who have not opted in to the FLSA collective through official notice to the Court, as required by 29 U.S.C. § 216(b). In addition, the Court will seek clarification of the status of Named Plaintiff's individual claims under the Pennsylvania Minimum Wage Act ("PMWA") (Doc. No. 1 at 10-11), the disposition of which is not addressed in the proposed settlement agreement or supporting brief (Doc. Nos. 76, 76-1).

## I. BACKGROUND

On May 6, 2020, Plaintiff filed a complaint against Defendant on behalf of herself and a putative collective class of workers employed by Defendant to perform utilization reviews ("Utilization Review Employees"), alleging violations of the FLSA, 29 U.S.C. §§ 201-219, and the PMWA, 43 Pa. C.S. §§ 333.101-333.115. (Doc. No. 1.) In her complaint, Plaintiff alleged that she and other Utilization Review Employees were misclassified as exempt by Defendant pursuant to 29 U.S.C. § 213 and as a result were not paid the overtime compensation to which they were entitled. (Id. ¶ 10.) On October 26, 2020, the Court conditionally certified Plaintiff's collective class under the FLSA.[1] (Doc. No. 38.) Since notice was sent to potential plaintiffs pursuant to the Court's conditional certification, sixteen (16) individuals have filed consent forms to become party plaintiffs ("Opt-In Plaintiffs"). (Doc. No. 76 at 3-4.)

---

[1] As Plaintiff did not timely move to certify a class under Federal Rule of Civil Procedure 23 as to her PMWA claims, her ability to bring those claims on behalf of a class is foreclosed. (Doc. No. 47.) However, Plaintiff's individual PMWA claims survive and appear to be unresolved by the terms of the Settlement Agreement. As discussed, supra, the Court will seek clarification of the status of Plaintiff's individual claims under the PMWA before conclusively opining on the reasonableness of the Settlement Agreement.

In June of 2021, the parties met with Magistrate Judge Arbuckle on three separate occasions to discuss settlement. (Doc. Nos. 68, 69, 70.) Magistrate Judge Arbuckle met with the parties for almost thirteen (13) hours total, guiding them to a tentative settlement agreement on June 28, 2021. (Id.) On December 16, 2021, Plaintiff filed an unopposed motion for settlement (Doc. No. 75), along with a brief in support (Doc. No. 76), the Settlement Agreement, executed by both parties (Doc. No. 76-1), and the declarations of Plaintiff's Counsel (Doc Nos. 76-2, 76-3). As of the date of the unopposed motion for settlement, the parties had conducted limited discovery and had not yet filed for final collective class certification. (Doc. No. 76 at 4-5.) In addition to Named Plaintiff and Opt-In Plaintiffs, the Settlement Agreement purports to include a wider "settlement class," which contains twenty-eight (28) additional individuals who worked as Utilization Review Employees between May 6, 2017 and June 28, 2021 ("Settlement Class Members"). (Id. at 2.) Accordingly, the class contains a total of forty-five (45) individuals. (Id.)

The Settlement Agreement contemplates disbursement of settlement funds to all Settlement Class Members, regardless of whether they filed written consent with the Court prior to settlement.[2] (Doc. No. 76-1 § IV ¶ 2.) Each Settlement Class Member, including those who

---

[2] The Settlement Agreement specifies that "[a]ll Participating Settlement Class Members who have not already opted into the Action and who deposit, cash or otherwise negotiate their Settlement Checks shall be deemed to have given their consent in writing to become a party plaintiff and opted into the FLSA collective in this Action in accordance with 29 U.S.C. § 216(b)." (Doc. No. 76-1 § IV ¶ 3.b.) However, § 216(b) of the FLSA requires that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." See 29 U.S.C. § 216(b) (emphasis added). As discussed, supra, the Court will direct the parties to clarify the legal basis for the settlement procedure proposed in § IV, Paragraph 3.b. of the Settlement Agreement.

have not previously opted into the lawsuit, will be mailed a settlement check, along with a notice of settlement.  (Id.)  Upon cashing or otherwise negotiating their settlement check, Settlement Class Members will be considered to have "opted in" to the collective and will be bound by the terms of the Settlement Agreement.  (Id. § IV ¶ 3.b.)  Opt-In Plaintiffs and Named Plaintiff will be bound by the Settlement Agreement regardless of whether they choose to negotiate their settlement checks.  (Id. § IV ¶ 2.)

## II.     LEGAL STANDARD

The Fair Labor Standards Act was designed to "protect certain groups of the population from substandard wages and excessive hours."  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945).  The FLSA is "uniquely protective," see Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015), as "FLSA rights cannot be abridged by contract or otherwise waived," see Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981).  To effectuate the purposes of the FLSA, cases arising under the statute may be settled only where (1) the Secretary of Labor supervises an employer's payment of unpaid wages to employees or (2) a district court enters a court-approved, stipulated judgment.  See 29 U.S.C. §§ 216(b), (c); Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); Brumley v. Camin Cargo Control, Inc., No. 08-cv-1798, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012).  When the parties to an FLSA action seek district court approval for settlement, the court's role is to "serve[] as gatekeeper to ensure[] that the parties are not negotiating around clear FLSA requirements."  See Acevedo v. Brightview Landscapes, LLC, No. 3:13-cv-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (internal quotation marks omitted).

The United States Court of Appeals for the Third Circuit has not addressed the factors district courts should assess when evaluating FLSA settlements.  However, courts within this

circuit have relied on the considerations set forth in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). See, e.g., Solkoff v. Pa. State Univ., 435 F. Supp. 3d 646, 652 (E.D. Pa. 2020). In Lynn's Food Stores, the United States Court of Appeals for the Eleventh Circuit concluded that a district court may approve an FLSA settlement that is a "fair and reasonable resolution of a bona fide dispute" and "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages." See 679 F.2d at 1354-55. In addition to the standard borrowed from Lynn's Food Stores, courts in the Third Circuit also analyze "whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace." See Bettger v. Crossmark, Inc., No. 13-cv-2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) (internal quotation marks omitted). Once a court has approved the substantive terms of a settlement, it must then address the reasonableness of any attorneys' fees stipulated to by the parties as part of the settlement agreement. See In re Chickie's & Pete's Wage and Hour Litig., No. 12-cv-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014). If all the foregoing standards are satisfied, then the court may approve the parties' settlement.

### III. DISCUSSION

In accordance with the standards articulated in Lynn's Food Stores, the Court will first address whether the settlement is a product of a bona fide dispute. See 679 F.2d at 1354. Finding the dispute is bona fide, the Court will then discuss whether the settlement is "fair and reasonable" under the Girsh v. Jepson framework, see 521 F.2d 153, 157 (3d Cir. 1975), and whether the release provision contained in the Settlement Agreement "impermissibly frustrates" the purposes of the FLSA. See Bettger, 2015 WL 279754, at *4.

**A.   Bona Fide Dispute**

A bona fide dispute involves "factual issues, rather than legal issues such as the [FLSA's] coverage and applicability." See Creed v. Benco Dental Supply Co., No. 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013) (internal quotation marks omitted). In essence, the parties must show that the "resolution of many of the relevant legal issues would turn on the underlying, disputed facts." See Kapolka v. Anchor Drilling Fluids USA, LLC, No. 2:18-cv-1007, 2019 WL 5394751, at *3 (W.D. Pa. Oct. 22, 2019). Courts have found that a bona fide dispute exists where the parties disagree as to the plaintiff's key allegations, including employee misclassification or the number of overtime hours worked. See, e.g., Carney v. Travelers Aid Soc'y of Phila., No. 19-cv-3599, 2020 WL 703684, at *3 (E.D. Pa. Feb. 11, 2020) (finding a bona fide dispute where the parties disagreed as to the number of hours worked by the plaintiff and whether she was misclassified as an exempt employee); Kapolka, 2019 WL 5394751, at *2-3 (same and noting additional factual issues as to the defendant's state of mind).

The Court, upon review of Plaintiff's complaint in this matter (Doc. No. 1), along with Defendant's answer (Doc. No. 19), finds that the settlement resolves a bona fide FLSA dispute. The issues at the core of the parties' dispute are factual, including whether the class members qualified as exempt, the number of hours they worked, whether overtime violations occurred, and whether Defendant's violations, if any, were willful. (Doc. Nos. 19 ¶¶ 1-12, 76 at 12-13.) Additionally, the Court agrees with Plaintiff that the process by which the parties reached settlement—a lengthy settlement conference mediated by Magistrate Judge Arbuckle, accompanied by extensive negotiations—is a further indication that the dispute is bona fide. (Doc. No. 76 at 13.)

    **B.**     **Fairness and Reasonableness of the Settlement Agreement and Furtherance of the FLSA**

The Court next turns to an assessment of "whether the agreement is fair and reasonable to the [plaintiffs]" and "whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace." See Bettger, 2015 WL 279754, at *4 (internal quotation marks omitted).

    **1.**    **The Girsh Factors**

In deciding whether a settlement agreement is "fair and reasonable," courts in the Third Circuit first look to the factors set forth in Girsh v. Jepson for the evaluation of the fairness of class-action settlements under Federal Rule of Civil Procedure 23. See 521 F.2d at 157; Deitz v. Budget Renovations and Roofing, Inc., No. 4:12-cv-0718, 2013 WL 2338496, at *5-7 (M.D. Pa. May 29, 2013) (applying the Girsh factors to an FLSA collective action settlement). The Girsh factors include:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 157. While the Girsh factors are a helpful framework, their "rigid application" is not necessary in the FLSA collective action context. See Kapolka, 2019 WL 5394751, at *3.

Here, the Court's analysis of the Girsh factors supports a finding that the settlement agreement is fair and reasonable. In the interest of brevity, the Court will not address each of the nine factors separately.[3] However, the Court notes that, as to the first six (6) factors, continuing

---

[3] The Court declines to address the seventh Girsh factor, "the ability of the defendants to withstand a greater judgment," because neither party has indicated that Defendant, a large

7

with litigation would be risky, complex, and expensive. The parties disagree on considerations essential to Plaintiff's claim, including the proper classification of the relevant employee class, the amount of hours worked by the employees, whether the class members were owed overtime compensation, whether the FLSA violations, if any, were willful, and whether the FLSA collective could be maintained through trial. (Doc. No. 76 at 12-13.) Resolving these disputes would involve protracted discovery, well beyond that which the parties have currently completed. (Id. at 15.) Both parties face the risk that the issues of liability, damages, and final collective class certification would not be resolved in their favor were the litigation to proceed.

      Addressing the eighth and ninth Girsh factors, the Court notes that the settlement fund appears reasonable. Although "calculating the best possible recovery for the plaintiffs is exceedingly speculative," the Court can judge reasonableness by looking at the terms of the settlement versus the risks of continued litigation. See Deitz, 2013 WL 2338496, at *7 (internal quotation marks omitted). While the parties had not completed discovery at the time they agreed to the proposed settlement, Defendant had produced extensive payroll information, which allowed counsel to accurately assess the value of Plaintiff's claims on behalf of the Settlement Class Members. (Doc. No. 76 at 15.) Here, the settlement class members will receive full compensation for overtime wages owed based on the assumption that each class member worked nine hours more than reported each week for a three-year period prior to the commencement of this action. (Id. at 16.) The amount of class-member compensation strikes the Court as reasonable, especially given the discovery information available to the parties and the risk that Plaintiff would recover nothing at trial.

---

insurance corporation, would struggle to pay a judgment greater than the settlement amount contemplated in the Settlement Agreement. See Girsh, 521 F.2d at 157.

Additionally, the settlement fund contains service awards to Named Plaintiff and Opt-In Plaintiffs. Such awards are reasonable given the time, energy, and risk entailed in participation in a lawsuit against one's employer or former employer under the FLSA. See Kapolka, 2019 WL 5394751, at *13 (finding $5,000 service awards to the named plaintiffs reasonable given that they were active participants in the litigation and the suit was brought in the public interest); Espenscheid v. DirectSat USA, LLC, 688 F.3d 872, 876-77 (7th Cir. 2012) (noting that service awards in class and collective actions exist to compensate named plaintiffs for assuming the risk of loss should the defendant prevail). The specific amounts in question, $10,000 to Named Plaintiff and $500 each to the sixteen (16) Opt-In Plaintiffs, are justified given each plaintiff's respective contributions to the litigation. (Doc. Nos. 76-1 § IV ¶ 6.b., 76 at 16-18.) The award to Named Plaintiff is within the range of incentive payments typically awarded to named plaintiffs in this circuit. See Kapolka, 2019 WL 5394751, at *13 (collecting cases approving service payments in common fund cases ranging from $2,500 to $12,500). Likewise, the awards to Opt-In Plaintiffs mirror the sums other district courts have found appropriate to award to non-named class members who agree to be deposed, act as witnesses, or otherwise cooperate in class litigation in a meaningful fashion. See, e.g., Nilsen v. York Cnty., 382 F. Supp. 2d 206, 215-16 (D. Me. 2005) (approving a $500 award to each class member who had agreed to be deposed); McClean v. Health Sys., Inc., No. 6:11-cv-03037, 2015 WL 12513703, at *4 (W.D. Mo. Aug. 4, 2015) (same); In re Bank of Am. Wage & Hour Emp. Litig., No. 10-cv-2138, 2013 WL 6670602, at *4 (D. Kan. Dec. 18, 2013) (approving as reasonable service awards of between $300 and $1,000 to non-named class members who agreed to be deposed, responded to interrogatories or document requests, or provided declarations). Because the service awards to

Named Plaintiff and Opt-In Plaintiffs are commensurate with the amounts of awards in similar cases and reflect each individual's contribution to the litigation, they are fair and reasonable.

### 2. Narrow Tailoring of the Release Provision

In addition to examining the Girsh factors, a court evaluating the fairness of an FLSA collective action settlement must determine whether the "agreement is narrowly tailored such that it resolves only the employees' wage and hour claims." See Wood v. Saroj & Manju Invs. Phila., LLC, No. 19-cv-2820, 2021 WL 1945809, at *9 (E.D. Pa. May 14, 2021). The Court may decline to approve an overbroad release provision on the grounds that it "impermissibly frustrates the implementation of the FLSA in the workplace." See Bettger, 2015 WL 279754, at *4 (internal quotation marks omitted). When a release reaches beyond such claims to encompass actions against the employer on non-wage-and-hour-related grounds, courts within this circuit will typically reject the provision as overbroad. See Bettger, 2015 WL 279754, at *9 (finding that a release provision encompassing "any and all" claims against an employer prior to the release date was overbroad and contrary to the FLSA); Solkoff, 435 F. Supp. 3d at 659-60 (rejecting a release provision encompassing unknown and unrelated claims on the grounds that such a provision subverts the FLSA's "goal of remedying the consequences of unequal bargaining power"); Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 779-80 (E.D. Pa. 2016) (declining to approve a release provision on the grounds that "release of an unknown claim based on a separate statutory cause of action frustrates the fairness of the [settlement agreement]"). Additionally, the Third Circuit Court of Appeals requires that waivers of employment discrimination claims be made "knowingly and willfully," a determination which requires "clarity and lack of ambiguity" in the language of a release. See Coventry v. U.S. Steel Corp., 856 F.2d 514, 522 (3d Cir. 1988). In summary, a release provision in an FLSA settlement

agreement is only acceptable if it unambiguously covers only wage-and-hour-related claims and cannot be read as a waiver of the plaintiff's right to sue on other grounds related to their employment.

Plaintiff represents that the release in the Settlement Agreement is "limited" and applies only to claims for "overtime or other unpaid wages under federal, state, and local law." (Doc. No. 76 at 2, 7.) However, the Court reads the Settlement Agreement as broader in scope than represented in Plaintiff's brief. The release provision reads, in relevant part:

> Settlement Class Members who negotiate their Settlement Checks shall fully, finally, and forever release, settle, compromise, relinquish, and discharge the Released Parties from any and all claims…or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Action or could have been alleged in the Action arising out of the facts or circumstances alleged in the Action while they worked for Defendant as a salaried Medical Management Nurse I through the Settlement Approval Date. This includes claims for overtime or other unpaid wages under federal, state, and local law and claims related to the foregoing for liquidated, exemplary, or punitive damages, penalties, equitable relief, interest, and attorneys' fees or costs.

(Doc. No. 76-1 § IV ¶ 3.a.) The Settlement Agreement, as currently worded, could be read to bar Named Plaintiff, Opt-In Plaintiffs, and all other participating Settlement Class Members from asserting any claim related to their employment with Defendant, including for harassment or discrimination. (Id.) Therefore, the Court will direct the parties to show cause why § IV, Paragraph 3.a. of the Settlement Agreement should be approved by the Court as written.

### C.     Attorneys' Fees

In addition to the terms of the settlement, the Court must determine whether the attorneys' fees stipulated to in the Settlement Agreement are reasonable. For the reasons that follow, the Court will approve the stipulated fee amount.

Under the FLSA, the court "shall, in addition to any judgment awarded to the [plaintiffs]…allow a reasonable attorney's fee to be paid by the defendant, and costs of the

action." See 29 U.S.C. § 216(b).  Courts within the Third Circuit typically use a percentage-of-recovery method for calculating attorneys' fees, cross-checked with the fee amount calculated under the lodestar method.  See Ortiz v. Freight Rite, Inc., No. 1:21-cv-1060, 2021 WL 5988582, at *3 (M.D. Pa. Dec. 17, 2021).  This method "awards a fixed portion of the settlement fund to counsel."  See Solkoff, 435 F. Supp. 3d at 658.  A percentage-of-recovery analysis requires that the Court consider the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

See Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000).

Here, the parties have agreed that Plaintiff's Counsel are entitled to a fee amounting to 33.33% of the gross settlement fund, or $133,333, along with reimbursement for reasonable litigation expenses, not to exceed $4,642.28.  (Doc. No. 76-1 § IV ¶ 6.c.)  As discussed below, the Court's analysis of the Gunter factors suggests that the agreed-upon attorneys' fees are reasonable.

### 1. The Size of the Fund Created and the Number of Persons Benefitted

In percentage-of-recovery cases, as the size of a fund increases, the percentage awarded to counsel typically decreases.  See In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 736 (3d Cir. 2001).  This rule is intended to prevent plaintiff's attorneys from receiving a windfall that has "no direct relationship to the efforts of counsel" in cases with extremely large settlement funds.  See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 339 (3d Cir. 1998) (internal quotation marks omitted).

Here, counsel requests a contingency award amounting to one third of the settlement fund. (Doc. No. 76-1 § IV ¶ 6.c.) The settlement fund contains $400,000, which will be used to compensate the forty-five (45) Settlement Class Members, pay service awards to Named Plaintiff and Opt-In Plaintiffs, cover attorneys' fees and expenses, and subsidize settlement administration costs over $7,000.[4] (Doc. No. 76 at 5.) Courts in the Third Circuit have found that a one-third contingency fee is appropriate in cases with significantly larger settlement funds and greater numbers of beneficiaries than the present case. See, e.g., Fein v. Ditech Fin., LLC, No. 5:16-cv-00660, 2017 WL 4284116, at *11-12 (E.D. Pa. Sept. 27, 2017) (approving a one-third contingency fee out of a settlement fund of $1,383,000 benefitting 279 class members); Tompkins v. Farmers Ins. Exch., No. 5:14-cv-3737, 2017 WL 4284114, at *9 (E.D. Pa. Sept. 27, 2017) (approving a one-third contingency fee out of a $775,000 settlement fund as "near the midpoint of the spectrum of requests approved in [the Third Circuit]"). This factor therefore weighs in favor of approving the requested attorneys' fees.

### 2. Substantial Objections by Members of the Class to the Settlement Terms

Where few to no members of an FLSA collective object to the terms of a settlement agreement, the second Gunter factor weighs in favor approving the attorneys' fees requested. See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005). Here, Named Plaintiff

---

[4] Plaintiff argues that first Gunter factor weighs even more heavily in favor of the requested fee award due to the release provision, which they claim is narrowly tailored to only cover wage-and-hour claims and constitutes an "exceptional result" on behalf of Plaintiff. (Doc. No. 76 at 20.) As the Court notes, supra, the release provision can be read as a general release of claims, and therefore the Court cannot agree with Plaintiff that the release is narrow enough to be considered "exceptional." (Doc. No. 76-1 § IV ¶ 3.a.)

does not object to the amount of attorneys' fees or other settlement terms.[5]  (Doc. No. 76 at 20.) However, the parties have not indicated that notice of settlement was sent to Settlement Class Members or Opt-In Plaintiffs, or that they were given any opportunity to object to the terms of the settlement.  Because objections were not solicited from anyone beyond Named Plaintiff, the Court finds this factor neutral.

### 3. The Skill and Efficiency of the Attorneys

The quality of attorneys and the representation provided by them is judged by "the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel" and "the skill and professionalism with which counsel prosecuted the case."  See In re Ikon Off. Sols., Inc., Secs. Litig., 194 F.R.D. 166, 194 (E.D. Pa. 2000) (internal quotation marks omitted).  Here, both attorneys representing Plaintiff have experience in wage-and-hour litigation and have contributed to a recent academic treatise on the subject. (Doc. No. 76 at 21-22.)  The Court notes that the settlement of this action in the early stages of discovery is a sign that, overall, Plaintiff's Counsel performed their work with skill and efficiency.  See Bredbenner v. Liberty Travel, Inc., Nos. 09-cv-905, 09-cv-1248, 09-cv-4587, 2011 WL 1344745, at *20 (D.N.J. Apr. 8, 2011) (noting that early settlement is a sign of efficient plaintiff's counsel).  As noted, supra, the recovery secured for the Settlement Class

---

[5] The consent form signed by Opt-In Plaintiffs contains an agreement to cede settlement authority in this action to Named Plaintiff and Plaintiff's Counsel.  (Doc. Nos. 8-1, 76-1 § V ¶ 4.) That agreement stipulates that the opt-in plaintiff gives Named Plaintiff and Plaintiff's Counsel authority to make "all decisions on my behalf, to the extent permitted by law, concerning the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiff's [C]ounsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to this lawsuit."  (Doc. No. 8-1.)  Settlement Class Members who have not filed consent forms are not bound by the terms of the settlement unless they choose to negotiate their settlement checks.  (Doc. No. 76-1 § IV ¶ 3.b.)

Members is ample considering the damages alleged.  Because Plaintiff's Counsel secured a generous recovery prior to extensive discovery or motions practice, the Court finds that this factor therefore weighs in favor of approving the requested attorneys' fees.

### 4. The Complexity and Duration of the Litigation

FLSA collective actions are, by their nature, complex.  See Brumley, 2012 WL 1019337, at *11 (noting that "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts").  Over the year and a half that this litigation has been pending, the parties have been through the first stage of collective action certification, as well as protracted settlement negotiations in front of Magistrate Judge Arbuckle on behalf of a putative collective class of forty-five (45) plaintiffs.  (Doc. No. 76 at 3-5.)  While this is hardly the lengthiest or most complex litigation possible in the FLSA collective action context, the Court finds that this factor weighs somewhat in favor of awarding Plaintiff's Counsel the requested fee amount.

### 5. The Risk of Nonpayment

Plaintiff's Counsel ran a risk of nonpayment, as they agreed to take this case solely on a contingency basis and would have received nothing had there been an unfavorable verdict at trial.  (Doc. No. 76 at 22-23); see Williams v. Sweet Home Healthcare, LLC, No. 16-cv-2353, 2018 WL 5885453, at *6 (E.D. Pa. Nov. 9, 2018) (finding that plaintiff's counsel having taken a case on contingency qualified as a "risk of non-payment" under the fifth Gunter factor).  Additionally, Plaintiff acknowledges that, although she feels the case is strong, the risk of decertification or a ruling that some or all the Utilization Review Employees are exempt workers is not insignificant.  (Doc. No. 76 at 14-15, 22-23); see Wood, 2021 WL 1945809, at *12 (noting that risk of non-payment exists under Gunter when defendants "have colorable defenses

15

sounding in fact and law"). The Court agrees with Plaintiff that this factor supports the requested fee award. (Doc. No. 76 at 22-23.)

### 6. The Amount of Time Expended by Plaintiff's Counsel

Settlement in this case is the result of an investment of 211.8 hours by Plaintiff's Counsel, a number that does not include time expended by local counsel, time co-counsel spent conferring about the case, or time spent seeking settlement approval. (Doc. No. 76 at 23-24.) This is an appropriate amount of time, considering the length of the litigation, amount of discovery completed, and the complexity of the subject matter. See, e.g., Rouse v. Comcast Corp., No. 14-cv-1115, 2015 WL 1725721, *13 (E.D. Pa. Apr. 15, 2015) (finding an outlay of 221.45 attorney hours "significant" in a wage-and-hour collective and class action litigated for approximately fourteen months); Kapolka, 2019 WL 5394751, at *10 (finding an outlay of over 300 hours by attorneys and staff was "substantial"). Therefore, the Court finds this factor weighs in favor of the requested fee award.

### 7. Awards in Similar Cases

Plaintiff's Counsel requests a fee amounting to 33.33% of the settlement fund or $133,333. (Doc. No. 76 at 10.) The requested fee, as measured by percentage of overall recovery, is in keeping with awards in other FLSA collective actions within the Third Circuit. See Mabry v. Hildebrandt, No. 14-cv-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases and finding that in the Third Circuit "the percentage of the recovery award in FLSA common fund cases ranges from roughly 20-45%"). Therefore, the Court finds that this factor supports the reasonableness of the fee award requested.

### 8. Lodestar Cross-Check

16

Courts in the Third Circuit confirm the reasonableness of a percentage-of-recovery fee award by cross-checking the requested award against the attorneys' lodestar amount. See Ortiz, 2021 WL 5988582, at *3. The lodestar is calculated by multiplying the number of hours reasonably worked on a case by the attorneys' reasonable hourly billing rates. See In re Rite Aid, 396 F.3d at 305. To determine the reasonableness of an attorney's hourly rate, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The party seeking fees bears the burden of establishing the reasonableness of their hourly rate. See Washington v. Phila. Ct. of C.P., 89 F.3d 1031, 1035 (3d Cir. 1996). If that party fails to do so, then the court may use its discretion to set an hourly rate. See id. at 1036. To establish the reasonable number of hours worked by counsel on a case, courts typically examine the records provided by counsel and then exclude time that is "excessive, redundant, or otherwise unnecessary." See McKenna v. City of Phila., 582 F.3d 447, 455 (3d Cir. 2009). However, the lodestar cross-check does not require "mathematical precision" or "bean-counting," and the district court "need not review actual billing records." See In re Rite Aid, 396 F.3d at 306-07.

In a percentage-of-recovery case, the court typically applies a multiplier to the lodestar to account for factors such as the risk of taking a case on a contingent basis and skill with which counsel litigated the case. See id. at 305-06. The multiplier is calculated by dividing the requested fee award by the lodestar amount calculated by the Court. See Haught v. Summit Res., No. 1:15-cv-0069, 2016 WL 1301011, at *12 (M.D. Pa. Apr. 4, 2016). The Third Circuit has suggested that multipliers between one (1) and three (3) are appropriately applied to

contingency-fee cases, depending on the circumstances of the litigation. See In re Cendant Corp., 243 F.3d at 742-43 (stating that the court "strongly suggest[s] that a lodestar multiplier of 3…is the appropriate ceiling for a fee award"); In re Rite Aid, 396 F.3d at 306-07 (explaining that "[t]he multiplier is a device that attempts to account for the … risk involved in a particular case and the quality of the attorneys' work").

Plaintiff's Counsel assert that they collectively spent 211.8 hours on this litigation and that both attorneys have a billing rate of $600 per hour. (Doc. No. 76 at 23.) The Court accepts counsel's representation of the total hours expended as facially reasonable, given that the instant case has been active for more than a year and a half and has progressed through several time-consuming stages of litigation. However, the Court subjects the "hourly rates" set by Plaintiff's Counsel to additional scrutiny. The Court notes that rates set by plaintiff's attorneys in wage-and-hour litigation are usually speculative and "untested by the marketplace," as such attorneys often work exclusively on a contingency basis. See Sakiko Fujiwara v. Sushi Yasuda, Ltd., 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014). Counsel provides little evidence substantiating the appropriateness of their hourly rate: Attorney Hedgpeth offers the Court one case in which his hourly rate was approved, see Del Toro v. Centene Mgmt. Co., LLC, No. 4:19-cv-02635, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021), (Doc. No. 76-2 ¶ 46); Attorney Seigel provides no cases supporting his hourly rate (Doc. No. 76-3); and Plaintiff's Counsel provide no third-party declarations or other evidence that the asserted rate is appropriate in the context of this litigation.

In contrast to the hourly rate of $600 asserted as reasonable by Plaintiff's Counsel, in recent years, this Court has capped fee awards at $300-375 per hour for counsel with twenty or more years of experience. See, e.g., Yeh v. United States Bureau of Prisons, No. 3:18-cv-943, 2020 WL 1505661, at *6 (M.D. Pa. Mar. 30, 2020) (collecting cases and approving hourly rates

ranging "between $300[] and $375 per hour" for "experienced, seasoned litigators in the field of disability rights"); Eckert v. Chauffeurs Loc. Union 776 Profit Sharing Plan, No. 15-cv-1920, 2018 WL 4404657, at *7 (M.D. Pa. Sept. 17, 2018) (finding "hourly rates in the range of $300[] to $375 to be reasonable for attorneys" with "approximately 25 years' practicing experience in this district"). Despite their professional focus on wage-and-hour litigation, Attorneys Hedgpeth and Seigel both have less than fifteen years of experience. (Doc Nos. 76-2 ¶ 3, 76-3 ¶ 3.) Therefore, the Court will use its discretion to adjust the hourly rate down to $250, an amount reasonable for attorneys with between ten and fifteen years of experience in the Middle District of Pennsylvania who are engaged in the litigation of collective claims. See, e.g., Cartagena v. Serv. Source, Inc., 328 F.R.D. 139, 145 (M.D. Pa. 2018) (approving a rate of $250 as "within the spectrum of reasonable rates previously approved by this court" for experienced attorneys engaged in complex litigation). Multiplying the Court-adjusted hourly rate of $250 by 211.8 hours of attorney time results in a lodestar amount of $52,950.

      Next, the Court must divide the requested rate by the lodestar amount and determine if the resulting multiplier is reasonable. Plaintiff's Counsel have requested $133,333 in attorneys' fees which, when divided by the lodestar amount above, produces a multiplier of 2.52. The multiplier falls on the high end of the range considered reasonable in the Third Circuit. See In re Cendant Corp., 243 F.3d at 742-43 (suggesting that multipliers between one (1) and three (3) are appropriate in contingency fee cases, depending on the circumstances of the litigation). However, given that: (1) the case in question is a complex matter requiring subject-matter expertise; (2) counsel took a significant risk of non-payment by taking the case on a contingency basis; and (3) counsel represents that the number of hours listed omits a significant portion of attorney time (Doc. No. 76 at 22-24), the Court finds that a multiplier of 2.52 is justified.

Therefore, while the Court declines to approve the reasonableness of the hourly rate claimed by Plaintiff's Counsel, applying the full percentage-of-recovery analysis, the Court does find that the requested fee of $133,333 is reasonable.

## IV. CONCLUSION

The Court is inclined to approve the Settlement Agreement, as the bulk of its terms are fair and reasonable, and it arises from a bona fide dispute between the parties. Prior to approval, however, and in accordance with the Order of the Court issued in conjunction with this Memorandum, there are three points on which the Court requires additional information from the parties. First, as currently interpreted by the Court, the release of claims in § IV, Paragraph 3.a. is not fair and reasonable, nor does it comport with the goals of the FLSA, due to its overbreadth. Therefore, the Court will direct the parties to show cause why the Court should approve § IV, Paragraph 3.a. of the Settlement Agreement as drafted. Second, the Court will direct the parties to clarify the legal basis for the settlement procedure outlined in § IV, Paragraph 3.b. of the Settlement Agreement. Finally, the Court will seek clarification of the status of Named Plaintiff's individual claims under the PMWA.